IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ARLEAN MOSES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:15cv850-CSC |
| | ) | (WO) |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

This is the plaintiff's third case before this court.[2] Plaintiff Arlean Moses ("Moses") filed applications for disability insurance benefits and supplemental security income on August 19, 2008, alleging disability beginning on July 10, 2008. (R. 889). Her applications were denied at the initial administrative level on June 23, 2010. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. After the Appeals Council denied review, Moses appealed to this court which remanded the case to the Commissioner on February 29, 2012. *Moses v. Astrue,* Civ. Act.

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017.

[2] In the plaintiff's first case, she asserted disability beginning on July 18, 2003 and continuing until denial of her claims on July 9, 2008. On April 9, 2010, this court affirmed the decision of the Commissioner denying benefits. *See Moses v. Astrue*, Civ. Act. No. 1:09cv175-TFM (M.D. Ala. 2010). Consequently, these applications are not before the court in this case.

No. 1:11cv581-CSC (M.D. Ala. 2012).

Moses subsequently filed another application for benefits which was denied by a different ALJ on March 6, 2012. On April 23, 2013, the Appeals Council issued an order vacating the June 23, 2010 decision and the March 6, 2012 decision, consolidating the cases, and remanding the cases for further consideration. The Appeals Council directed the ALJ to associate the cases and render a single decision.

On August 20, 2014, the ALJ held another administrative hearing at which Moses, two medical experts and a vocational expert testified. On January 16, 2015, the ALJ issued a decision denying Moses benefits. (R. 889-914). The Appeals Council rejected a subsequent request for review. Thus, the ALJ's August 20, 2014 decision became the final decision of the Commissioner of Social Security (Commissioner).[3] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[4] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[5] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. The Issue

**A. Introduction**. The plaintiff was 40 years old on the alleged date of onset and

almost 47 years old on the date of the administrative hearing.[6] (R. 912, 959). She completed high school. (R. 912). Her past work experience includes work as a sales clerk, hairstylist, and child monitor. (*Id*.). The ALJ concluded that the plaintiff has severe impairments of "bilateral carpal tunnel syndrome status post release; bilateral cubital tunnel syndrome status post release; fibromyalgia; degenerative disc disease of the cervical spine status post fusion; degenerative disc disease of the lumbar spine; asthma; depression; and bipolar disorder." (R. 892). The ALJ also concluded that Moses' "Grave's disease, plantar fasciitis, insomnia, migraines, hypertension, left knee pain, fibroids, and obsessive compulsive disorder" were non-severe impairments. (*Id*.). The ALJ concluded that the plaintiff was unable to perform her past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, he also concluded that there were significant number of jobs in the national economy that Moses could perform. (R. 912-13). Accordingly, the ALJ concluded that Moses was not disabled. (R. 914).

**B. The Plaintiff's Claim.** As stated by the plaintiff, the sole issue before the court is whether "[t]he ALJ erred by failing to properly consider Ms. Moses' fibromyalgia equaled a listing." (Doc. # 12 at 13). It is to this issue that the court now turns.

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return

[6] Moses testified that she would "be 47 Friday" and the administrative hearing, August 20, 2014, was held on Wednesday.

to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

Because fibromyalgia is not a specific impairment contained in the Listings, Moses argues that she meets the Listing for Inflammatory Arthritis, Listing 14.09D. According to Moses, the ALJ committed reversible error by failing to find her fibromyalgia equaled that listing. Listing 14.09D provides in pertinent part as follows:

> D. Repeated manifestations of inflammatory arthritis with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.

> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence and pace.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 14.09D.

The ALJ considered but then concluded that Moses' fibromyalgia did not meet Listing 14.09D.

> The claimant's representative argues that the claimant's fibromyalgia equals the requirements of listing 14.09D related to inflammatory arthritis (Exhibit B13E). There is no evidence in the record, however, that any physician opined that the claimant's fibromyalgia medically equals the requirements of listing 14.09D or any other listed impairment. Rather, Dr. Alexander, the medical expert, specifically testified that the claimant does not have any impairment that meets or equals a listed impairment. Additionally, listing 14.09D requires the claimant to have repeated manifestations of inflammatory arthritis but the claimant has not been diagnosed with, or treated for, inflammatory arthritis during the adjudication period. The claimant was seen by Dr. Soh, a rheumatologist, in September 2008 for evaluation of a "non-confirmed past history" of rheumatoid arthritis. The diagnostic testing was negative for rheumatoid arthritis, lupus, or other connective tissue disease. RA factor and ANA were negative, sed rate was normal, and there were no signs of synovial inflammation on physical exam. Follow up with Dr. Soh similarly showed no evidence of inflammatory arthritis (Exhibits B8F, B16F).

(R. 896).

The ALJ then described in detail Moses' treatment for fibromyalgia and considered the effects of this impairment on her ability to perform work.

> With respect to the claimant's alleged fibromyalgia, the claimant started seeing Dr. Taylor, a family physician, in August 2008 (Exhibits 6F, B58F). She reported a history of, among other things, rheumatoid arthritis. Dr. Taylor diagnosed the claimant with rheumatoid arthritis, apparently based on her reported history, as there were no obvious deformities on examination of her extremities. He ordered additional testing, including sed rate, ANA, and rheumatoid factor, and referred the claimant to a rheumatologist for further evaluation. The rheumatoid factor was negative, ANA was negative, and sed

rate was normal (Exhibit B8F).

The claimant sought treatment from Dr. Soh, a rheumatologist, in September 2008 (Exhibits 1F, B8F). On examination, there was no joint tenderness, swelling, or signs of synovial inflammation. The claimant had normal muscle strength although she did have a fine tremor of the right hand, which was later found to be related to hyperthyroidism secondary to Grave's disease. There were trigger points at the neck, trapezius, angle of scapula, lower back and anterior chest way, and dorsum of the hands. Dr. Soh diagnosed the claimant with fibromyalgia syndrome. He found no evidence of rheumatoid arthritis, lupus, or other connective tissue disease. He recommended the claimant continue on her current medication as prescribed by Dr. Taylor. The claimant sought follow up treatment with Dr. Soh in October 2008, March 2009, and August 2009 (Exhibits 1F, B16F). She continued to have some soft tissue tenderness but no joint tenderness, swelling, or signs of synovial inflammation. Because there was no evidence of connective tissue disease, Dr. Soh dismissed the claimant from his practice in August 2009 and recommended that she follow up with her primary care physician. The claimant did return to see Dr. Soh one more time, in October 2009, for generalized pain symptoms. The claimant had not been taking her medication for hyperthyroidism at that time and Dr. Soh believed that the claimant's pain was secondary to her uncontrolled hyperthyroidism. Dr. Soh again recommended that the claimant follow up with her primary care as well as her endocrinologist for treatment of hyperthyroidism.

The claimant sought occasional follow up treatment with Dr. Taylor, her primary care physician (Exhibits B26F, B33F, B70F). Although Dr. Taylor diagnosed the claimant with fibromyalgia, his treatment records show no evidence of positive tender or trigger points. He simply prescribed mediation. Dr. Kesserwani, the claimant's neurologist, also prescribed medication for fibromyalgia but his treatment records likewise did not identify any positive tender or trigger points (Exhibit 5F). Since October 2012, the claimant has been seeing Dr. Akinduro for treatment (Exhibits B45F, B53F, B81F, B83F, B87F). She requested medication for fibromyalgia at her initial appointment. She had been on Lyrica and Cymbalta in the past but they caused side effects and/or were reportedly not effective. Dr. Akinduro diagnosed the claimant with fibromyalgia but there was no evidence of any positive tender or trigger points. He started the claimant on Savella, which the claimant reported at a follow up visit the next month was "working fine" (Exhibit B45F). Dr. Akinduro has continued the claimant on Savella with no reported adverse side

> effects. His treatment records have continued to show essentially normal physical exams. The claimant testified that she is constantly fatigued but this is not supported by Dr. Akinduro's treatment records, which show no specific complaints of fatigue or recent changes in her medication.
>
> At the hearing, Dr. Alexander [the medical expert] testified that the claimant's fibromyalgia does not cause any objective functional limitations. The undersigned has nevertheless considered the claimant's subjective complaints of pain in formulating the residual functional capacity. The reduction in the claimant's residual functional capacity from very heavy work to mere light work, along with the additional postural limitations, allows for the claimant's occasional pain secondary to fibromyalgia. The limitation on working at unprotected heights plus the limitation to unskilled work further allows for some reduction in concentration due to pain and fatigue. No additional limitations related to the claimant's fibromyalgia are warranted, however, as her symptoms are generally controlled with Savella, neither Dr. Taylor, Dr. Kesserwani, nor Dr. Akinduro's treatment records show evidence of positive tender or trigger points which, while not dispositive, is persuasive, and Dr. Akinduro specifically recommended that the claimant exercise. Additionally, the claimant has not been diagnosed with rheumatoid arthritis, lupus, or other connective tissue disease.
>
> Dr. Soh, the claimant's rheumatologist, believed that the claimant's pain was related to her hyperthyroidism. The claimant was diagnosed with hyperthyroidism secondary to Grave's disease in 2008 (Exhibits 1F, B8F, B17F). She underwent radioactive iodine treatment in December 2009 and subsequently developed post-treatment hypothyroidism (Exhibit 1F, B21F, B22F, B29F). The claimant was started on Synthroid and her symptoms improved. She is no longer experiencing any symptoms related to her hyper or hypothyroidism and her exams show normal thyroid function (Exhibits B45F, B53F, B83F, B87F). Consequently, the record does not support additional functional limitations related to the claimant's history of hyperthyroidism or hypothyroidism beyond those already set forth in the residual functional capacity, i.e., light work with further postural, environmental, and mental limitations.

(R. 905-907).

Although Moses argues that the ALJ did not properly consider her fibromyalgia, the

court disagrees. The ALJ specifically addressed whether Moses met Listing 14.09D and determined that she did not. Substantial evidence supports the ALJ's determination. Merely having a diagnosis is insufficient to meet a listing. "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Gray v. Comm'r of Soc. Sec.*, 426 F. A'ppx 751, 753 (11th Cir. 2011); *Manzo v. Comm'r of Soc. Sec.*, 408 F. A'ppx 265, 269 (11th Cir. 2011). While the record indicates that the plaintiff has been diagnosed with fibromyalgia, the medical evidence in the record indicates that this condition is well controlled and does not have more than a minimal effect on her ability to perform basic work activity. Moses has failed to demonstrate that her fibromyalgia "significantly limits" her ability to work. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). *See also Reynolds v. Comm'r of Soc. Sec.*, 457 F. App'x 850, 852 (11th Cir. 2012).

Moses appears to argue that the ALJ should have accepted her testimony regarding her pain. However, the ALJ did not fully credit her testimony, and Moses does not challenge his credibility determination. After a careful review of the record, the court concludes that the ALJ's reasons for discrediting the plaintiff's testimony were both clearly articulated and supported by substantial evidence. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). The only evidence that Moses

points to that suggests that her fibromyalgia compromises her ability to work is her own testimony, which the ALJ discounted. Consequently, the court concludes that the ALJ's decision was supported by substantial evidence.

Moses's argument that Social Security Ruling 12-2P supports a finding that her fibromyalgia meets or equals Listing 14.09D is without merit. Social Security Ruling 12-2P requires that before finding disability based on fibromyalgia, the Commissioner "must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." SSR 12-2P (July 25, 2012). The Ruling provides criteria for determining whether a person is disabled based on fibromyalgia. (*Id*.) The ruling provides two ways in which Moses can establish she is disabled.

First, she can show that she meets the following three criteria.

> 1. A history of widespread pain - that is, pain in all quadrants of the body . . . that has persisted (or that persisted) for at least 3 months. . . .
>
> 2. At least 11 positive tender points on physical examination . . . The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist. . . .
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded.

*Id*.

She can also demonstrate disability based on fibromyalgia by establishing the following three criteria.

> 1. A history of widespread pain [as set forth above]

2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

(*Id*.) (footnotes omitted).

A diagnosis of fibromyalgia is usually only made after other diagnoses have been ruled out and to meet the diagnostic criteria, a patient must have at least 11 of 18 tender points on all four quadrants of the body. While Moses was diagnosed with fibromyalgia on September 29, 2008,[7] there is no indication of how many trigger points she had when she was diagnosed. (R. 606). Moreover, her examination revealed no edema, no joint tenderness, and no musculoskeletal tenderness. (*Id*.)

On October 13, 2008, Moses complained of "generalized arthralgia and myalgia" but the pain was attributed to her hyperthyroidism. (R. 751). On March 11, 2009, Moses had trigger points only "at the center of trapezius on both shoulders." (R.737). The court has scoured the medical records[8] and found no other examinations that revealed trigger or tender

---

[7] Because Moses only challenges the ALJ's findings regarding her fibromyalgia, the court does not discuss all of Moses' medical records, only those relevant to that impairment.

[8] On November 16, 2015, the court entered a scheduling order in this case requiring the parties to file briefs addressing their claims or contentions. In the order, the plaintiff was specifically directed that, when "alleging deficiencies in the ALJ's consideration of claims or alleging mistaken conclusions of fact or law and contentions or arguments by the Commissioner supporting the ALJ's conclusions of fact or law," she **must include a specific reference, by page number, to the portion of the record.** (Doc. # 3 at 2-3, ¶ 6) (emphasis in original). The plaintiff's brief fails to complies with the court's order. In some places, the plaintiff references only exhibit numbers while in other places, her TR reference has no page number.

points.

On October 22, 2009, Dr. Soh opined that Moses' pain was "secondary to uncontrolled hyperthyroidism. (R. 722). A November 6, 2009 treatment note indicates that Moses had "no significant malaise or fatigue." (R.718).

On October 25, 2011 and April 11, 2012, Moses presented to Dr. Sugg for check up of her Grave's disease. (R. 1508, 1505). At that time, she denied bone, back and joint pain. (R. 1509, 1506).

On February 8, 2012, Moses complained to Dr. Steven Wise of "some fatigue" but was seen for a follow up of her Grave's disease. (R. 1587-1589). She did not complain of pain. (*Id*.).

On August 8, 2012, Moses presented to Dr. Wise for a follow up of her Grave's disease. (R. 1584-1586). Although she expressed concern that "nobody's taking care of her fibromyalgia," she was in no distress and expressed no complaints of pain. (*Id*.)

On February 1, 2013, Moses was seen by Dr. Wise for a follow up of her Grave's disease. (R. 1581-1583). She made no complaints of pain or fatigue, and she was in no acute distress. (R.1582).

Regardless of which criteria Moses relies on, she does not meet the criteria for either one. While Moses has a diagnosis of fibromyalgia, the medical evidence does not demonstrate complaints of widespread pain, and does not provide evidence of the requisite trigger points. She has no trigger point assessments beyond 2009. More importantly,

however, the medical evidence does not exclude other conditions as the cause of her symptoms. The medical records repeatedly indicate that Moses' pain is secondary to her uncontrolled hyperthyroidism and/or hypothyroidism.

Furthermore, although the medical records demonstrate that Moses has been diagnosed with fibromyalgia, there is no indication in the records that her condition compromises her ability to work. The mere fact that Moses has a diagnosis of fibromyalgia is insufficient to demonstrate that this condition is disabling. *See McCruter*, *supra*.

"Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1235, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988). This the plaintiff has failed to do. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly considered whether Moses met or equaled Listing 14.09D and properly considered the effect of Moses' fibromyalgia on her ability to perform work.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Instead the court reviews the record to determine if the decision reached is

supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

**V. Conclusion**

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is due to be affirmed.

A separate order will be entered.

Done this 25th day of January, 2017.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE